Next case called for oral argument is in re W.S. Next case. May it please the court. Good morning, your Honor, my name is John Huberman. I'm from the Fourth District Apollo Prosecutor's Office on behalf of the State. The first issue in this case, as your Honors are aware, whether the defendant was proven guilty beyond a reasonable doubt for possesing a gun. As your Honors are aware, a reviewing court is not to retry the defendant. He has already been found guilty beyond a reasonable doubt. Your Honor's job is to consider the evidence in the light most favorable to the prosecution where any rational try or fact could have found the essential elements of the crime beyond a reasonable doubt. In regards to the possession of a firearm, I'd like to begin with the evidence. If you look at the State's brief on page 4, that is when the relevant evidence begins. I'd also ask your Honors to remember that the trial court was in the best position to view the evidence. This was a minor. He was a victim. The defendant in this case was a classmate of his. He was probably nervous, scared of being in court, being asked and badgered by different lawyers to testify as to, well, did you have a gun? Did you have a gun? Are you sure it was a gun? So, as we start, he stated, I was coming around the corner, slowed to brake, and to my left side, or my driver's side, there was the defendant and Chris on the curve. They ran up to the side of the car, stuck something in the window, seemed like it was a gun to me, and then Chris demanded for me to get out of the car, opened up on the side of the door. That was the first question he was asked in regards to this case. He testified very quickly, not many details, so then they tried to break it down a little slower. The state said, what did the defendant do when you ran up to your car? The victim said, he didn't say a word, he just stuck something in the car that appeared to me that looked like a gun. It could have been anything. Again, the defendant was probably nervous when saying this. He was asked again, describe the object. What did it look like? It was small and silver. Anything else about it that you can remember? It was just small and silver. Hold it like it was a gun. Holding it like it was a gun? Yeah. Where did he put the object? First, he stuck it in, it was like towards my head, then he just put it down on my chest. Did he move it after that? Yeah, he moved it after a while. What made you think it looked like a gun? The way, yeah, he was holding it. Then there was some more further testimony about this regarding the phone call that he had. What was it? He said it was a phone. Okay. Then on cross-examination, the defense counsel even begins questioning the victim with the presumption that the defendant did possess a gun. The defense counsel said, okay, then you said you got the gun in your chest. Yes. Okay, and then was the gun in your chest the whole time? Yes. Again, when viewing this evidence in the light most favorable to the prosecution, I think this clearly proves beyond a reasonable doubt that the defendant possessed a gun. The defendant counsel kept asking the witness about the gun for multiple lines. Finally, the state objected and said, I believe this has been asked and answered. The trial court agreed, said the question was asked and answered, let's move on. I think this clearly shows that the trial court had made a decision as to whether the defendant possessed a gun and that he did possess a gun. Further, in this statement, the defendant did testify. So the trial court was able to weigh the victim's testimony with the defendant's testimony. What did the defendant say? He said it was a cell phone and that he was just playing. Who uses a cell phone in this manner to put up against someone's head and chest as he's trying to take the vehicle? He also stated he tapped on his left, which was apparently a game where the victim and defendant tap each other's pockets, which Willie thought may have led the victim to think that he was being robbed. Yet there's testimony in this case that says they're mere acquaintances from class. So how would they have this type of game that they play? It also seems to be a little bit strange of a game to the state. Additionally, as counsel stated, defendant called the victim to make sure that he knew he was not part of whatever Chris was trying to do, because it seemed serious. To the state and likely to the trial court, this more showed guilt rather than trying to say sorry. He was making sure the victim wouldn't put him in with this crime. And all this evidence viewed in the light most favorable to the prosecution proved defendant guilty beyond a reasonable doubt. Now, in regard to defendant's criminal intent, the defendant knowingly attempted to hijack the victim's vehicle. How did he do this? He committed a substantial step by placing a gun through the window. Now, defense counsel relies on the victim's testimony that said Chris wasn't for, the defendant wasn't really trying to steal the car. But that's besides the point. Defendant knew Chris was looking for a ride. Chris was badgering defendant, give me a ride. Can I have some money? Give me a ride. I need to get to East St. Louis. This places knowledge within the defendant's head that, oh, he needs a car. How's he going to get a car? Oh, let's go get this car that's coming around the curve. It's dark. No one's going to see. So what do they do? Defendant goes up to the car, puts a gun in the window and tries to get the car. But as he's doing that, he realizes, oh, I know this guy from class. He's going to tell the cops if I steal the car. So he backs off. It doesn't matter. He already committed attempt vehicular hijacking. So regardless of what the victim states after that is irrelevant to the state. Again, he knew this guy. He probably didn't want to throw him under the bus to the police. But he had to testify and he was testifying. And so the state's posits that there was sufficient evidence present to show that the defendant had the intent to commit the crime in this case. There was also an issue regarding the competent evidence that trial court considered, whether it was competent through the hearsay of Sergeant Powers. The state argues if this testimony was improper hearsay, it was harmless error because the trial court did not rely upon it in its finding. And I will not go into that further unless your honors have any questions. I don't believe we do. Thank you for your time. Thank you, counsel. So just briefly, I think the most important thing here is that the state chose how they wanted to charge this. They chose to charge this as with Willie as a principal and an attempt to aggravate vehicular hijacking. That meant they had to prove the gun beyond a reasonable doubt and they had to prove intent to commit the crime. It is possible that Willie was standing on that corner and he wasn't just trying to play a game. Maybe he did have this gun in his pocket and he was trying to use it so that it looked like a gun. But in order to prove that there was in fact a gun beyond a reasonable doubt, this can't just be a suspicion. This needs to be proof of the actual object beyond a reasonable doubt. And I don't think there's a case yet that has found that proof without more than is present in this case. You know, counsel points out that Kashan maybe didn't want to get his friend in trouble and that's why he was hedging so much. Maybe Kashan was a little bit nervous being on the stand. That's completely understandable. But at the end of the day, Kashan needed to give the unequivocal testimony about the gun. And I don't think that he was able to do that. As far as the questions that came up in cross-examination, it's only in pulling those out of context. You know, defense counsel was asking about the positioning and taking as the assumption that there was a gun. But obviously defense counsel did not believe there was a gun because his next questions were, well, what did you really see? Did you see a gun? And that's when he got the admission, well, I couldn't really see. And again, we're not saying credit Willie, discredit Kashan. We're saying credit Kashan. Maybe Willie's not being completely upfront about what was going on. But if you credit Kashan's testimony, he simply did not see what Willie had in his hand well enough to prove that it was a gun beyond a reasonable doubt. And similarly with the intent. Kashan, he may have been hedging because he was a friend, but there simply wasn't the evidence there that Willie intended to take the car. There isn't this evidence that there was any pre-planning. Looking just briefly at the harmless error argument that was referenced, I think it's important to recognize the trial court said specifically a key finding is that they did not know who the car belonged to when it drove up because there were no lights on the street. And we go over this in the reply brief and it's not over in the state's brief. When the court relies on something that is inadmissible evidence, that rebuts the presumption that they're relying on competent evidence. And when the court says they didn't know who the car belonged to until it came up because there were no lights, that shows the court is relying on Bowers' testimony that there were no lights on the street. If the court hadn't said that, we would be in a different position because we might not be able to know, well, was the court relying on it or weren't they? But here, that's the only place where this question of there being no lights comes up in the testimony. So it indicates that the court was relying on the hearsay, just as the state had argued it. If there are no further questions? I don't believe so. We appreciate the briefs and arguments. Counsel will take this case under advisement. We'll be in a short recess and then have the last court argument.